# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CORA L. WANDEL,<br><br>    Plaintiff,<br><br>    v.<br><br>KEVIN DOCKETT SR. TRUCKING, INC., *et al.*<br><br>    Defendants. | Civil Action No. 09-01246 (BAH)<br>Judge Beryl A. Howell |

## MEMORANDUM OPINION

  This controversy arises out of a pedestrian-truck accident that occurred at the intersection of 20th and M Street N.W. in Washington, D.C. around 11:00 AM on July 28, 2006. Defendant Marvin Smith was operating a dump truck in the course of his employment with Defendant Kevin Dockett Sr. Trucking, Inc. and struck the plaintiff, who at that time was a male known as Curtis Wandel and who is now a female known as Cora Wandel. The parties to this lawsuit stipulated that Defendant Marvin Smith was negligent in the operation of his truck and that the plaintiff did not contribute to the occurrence of the collision. The parties disputed, however, what injuries and damages, if any, were proximately caused by the July 28, 2006 accident. Accordingly, the Court held a four-day jury trial on those issues. Following deliberation, the jury declined to award the plaintiff any damages. The plaintiff now moves for a new trial. For the reasons explained below, the motion for a new trial is denied.

 **I.  BACKGROUND**

  Prior to March 2007, the plaintiff worked as a technical development manager and billing

manager at a law firm. Tr., June 15, Part 2 at *57.[1] Her responsibilities at the law firm included software programming in a proprietary computer system designed to generate pension plan documents for firm clients. Tr., June 14, at *161-*162. On July 28, 2006, the plaintiff was struck by a dump truck driven by defendant Marvin Smith. Tr., June 14, at *123-*124. The plaintiff suffered an injury to the head and an injury to the arm. Tr., June 15, Part 2 at *74. She was treated at The George Washington University Hospital ("GW") and released the following day. Tr., June 16, at *37. During the course of subsequent treatment at GW, the plaintiff received a neurological evaluation from Dr. Theodore Rothstein. Tr., June 16, at *157. Dr. Rothstein ultimately diagnosed the plaintiff with Parkinson's disease, unrelated to the collision, and treated the plaintiff for Parkinson's disease for an extended period of time. *Id*.

Several months after the July 2006 collision, in March 2007, the plaintiff was fired from her job as a computer programmer at the law firm. Tr., June 14, at *165, *179. In September 2007, the plaintiff underwent male-to-female gender revision surgery. Tr., June 15, Part 2 at *54-*55. The plaintiff changed her name to Cora Wandel and has subsequently lived as a female. Tr., June 14, at *143.

On July 7, 2009, approximately three years after the collision, the plaintiff brought this lawsuit against the defendants asserting claims for up to two million dollars in compensatory damages and two million dollars in punitive damages resulting from the collision. Compl. ¶ 7.

The week before the scheduled trial, on June 10, 2011, the parties entered a stipulation that defendant "Marvin Smith was negligent in the operation of his truck on July 28, 2006 and that as a result of his negligence, Defendant Smith's truck collided with the Plaintiff." Stipulation, ECF No. 23 (the "Pre-Trial Stipulation"). The parties also stipulated that Smith's

---

[1] The parties have not requested a formal transcript from the court reporter. Accordingly, the Court's citations to the transcript are from the court reporter's rough draft of the proceedings.

actions were within the scope of his employment by defendant Kevin Dockett Sr. Trucking Inc. *Id.* The Pre-Trial Stipulation further provided that: "The jury is to consider and decide what, if any, injuries and damages were proximately caused by the July 28, 2006 accident, and the nature and extent of these damages." *Id.*

On June 14, 15, 16, and 17, 2011, the Court held a jury trial on the issues of causation and damages identified in the parties' Pre-Trial Stipulation. At trial, the plaintiff primarily argued that the July 28, 2006 collision and resulting concussion had caused a permanent decline of her cognitive abilities, leading the plaintiff to lose her job as a computer programmer and rendering her unable to perform any work of a comparably high complexity in the future. *See, e.g.,* Tr., June 15, Part 2 at *3, *11. The plaintiff conceded, however, that she still possessed sufficient ordinary cognitive abilities to be employable in other jobs, such as jobs involving clerical tasks, and the plaintiff also testified about her own efforts to start a business after leaving her job at the law firm. Tr., June 16, at *105; Tr., June 15, Part 2 at *8-*10. The plaintiff's primary claim for damages at trial was based on an economic estimate of her alleged lost earnings capacity over the rest of her working life – reflecting the difference between her compensation in her prior job as a programmer at the law firm and her estimated compensation in the type of clerical job that she conceded she was still capable of performing. Based on the testimony of the plaintiff's economic expert, this claim for damages ranged from approximately $684,000 to $1,324,000. Tr., June 16, at *130-*131; Tr., June 17, at *37.

The defense argued and presented evidence to suggest that any mental deficits that the plaintiff experienced, such as difficulties in memory and concentration, were due to factors unrelated to the collision—namely, the plaintiff's previously diagnosed Parkinson's disease, as well as her documented history of depression and factors related to the gender revision operation

and its aftermath. Tr., June 16, at *157; Tr. June 17, at *52-53. The defense also argued that the plaintiff had not been terminated from her job due to any cognitive problems or difficulties with her work, but rather because the law firm was engaging in cost-cutting due to poor financial performance and because the plaintiff intended to leave her job anyway to pursue her gender change surgery. Tr., June 14, at *191-*192, *202.

On June 17, 2011, the parties presented their closing arguments and the jury began deliberations. The jury was instructed to fill out a verdict sheet that read: "What, if any, damages do you award in favor of plaintiff Cora L. Wandel as the direct result of the auto accident of July 28, 2006?" Verdict Sheet, ECF No. 30. The parties mutually drafted this verdict sheet and approved it on the record before jury deliberations began. Tr., June 17, at *59-*60. Following deliberations, the jury rendered a verdict awarding zero dollars to the plaintiff. *Id.*; Verdict Sheet.

On June 23, 2011, the plaintiff filed a motion for a new trial pursuant to Federal Rule of Civil Procedure 59. On June 29, 2011, the plaintiff amended her motion for a new trial. The plaintiff's amended motion for a new trial is presently before the Court.

## II.     MOTION FOR A NEW TRIAL STANDARD

Pursuant to Federal Rule of Civil Procedure 59, "[t]he court may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). "The decision to grant or deny such a motion lies within the sound discretion of the court." *Armenian Assembly of America, Inc. v. Cafesjian*, Nos. 07-1259 *et al.*, 2011 WL 1745155, at *5 (D.D.C. May 9, 2011) (quotation omitted). To preserve the function of the jury, new trials should not be granted unless "a solid basis for doing so" exists. *In re Lorazepam & Clorazepate Antitrust*

*Litig.*, 467 F. Supp. 2d 74, 87 (D.D.C. 2006) (quoting *Warren v. Thompson*, 224 F.R.D. 236, 239 (D.D.C. 2004)). "Further, such a motion should be granted only when the court is convinced that the jury verdict was a 'seriously erroneous result' and where denial of the motion will result in a 'clear miscarriage of justice.'" *Id*. "Generally, a new trial may only be granted when a manifest error of law or fact is presented. Further, the standard for granting a new trial is not whether minor evidentiary errors were made." *Id.* (citation omitted).

### III. DISCUSSION

The plaintiff contends that a new trial should be ordered because the jury verdict was against the weight of the evidence; the verdict was so inadequate as to indicate prejudice, passion, or partiality; and the jury verdict was based on oversight, mistake, or consideration of an improper element. Pl.'s Am. Mot. for New Trial at 1. The plaintiff advances three primary arguments in favor of a new trial: (1) that it was arbitrary, irrational, or clearly against the weight of the evidence for the jury to have awarded zero dollars in damages, given that the defendants had stipulated to striking the plaintiff negligently and given that the plaintiff had introduced into evidence certain medical bills for treatment following the collision; (2) a question the jury asked in a note to the Court indicated that the jury considered improper factors in deliberation; and (3) certain exhibits of medical bills, which were admitted into evidence, were not sent to the jury for consideration in their deliberations. The Court addresses each of these issues in turn.

**A. The jury's failure to award damages for medical expenses does not necessitate a new trial.**

The Court will not grant a new trial based on the jury's decision not to award the plaintiff recovery for medical expenses for the reasons explained below.

The plaintiff contends that the jury's award of zero dollars in damages was "arbitrary" and "irrational" because "undisputed evidence established that the July 28, 2006 pedestrian-truck collision caused the plaintiff to suffer some injury and damages" and because various medical bills for treatment following the July 28, 2006 accident were offered into evidence. Pl.'s Mem. in Supp. of Mot. for New Trial ("Pl.'s Mem.") at 5-6.

The defendant responds that the Pre-Trial Stipulation did not concede that any claimed injuries or damages were proximately caused by the defendants, and that, pursuant to the stipulation, it was the jury's function to "to consider and decide what, if any, injuries and damages were proximately caused by the July 28, 2006 accident, and the nature and extent of these damages." Pre-Trial Stipulation; *see also* Def.'s Opp'n to Pl.'s Mot. for New Trial ("Def.'s Mem.").

The plaintiff relies primarily on two cases in which courts in the District of Columbia ordered new trials following an award of zero damages. Both of these cases are distinguishable, however. In *Lester v. Dunn,* the D.C. Circuit noted that "[a]lthough the question of damages is within the province of the jury, a jury verdict should be set aside when it is so inadequate as to indicate prejudice, passion or partiality on the part of the jury, or where it must have been based on oversight, mistake or consideration of an improper element." 475 F.2d 983, 986 (D.C. Cir. 1973). The D.C. Circuit in that case found that "since the jury awarded [the plaintiff] less than his stipulated out-of-pocket expenses, the award must have been based either on prejudice or on consideration of an improper factor." *Id.* In this case, however, there were no stipulations as to damages and the jury was called upon "to consider and decide what, if any, injuries and damages were proximately caused by the July 28, 2006 accident." Pre-Trial Stipulation. Moreover, the D.C. Circuit in *Lester* specifically acknowledged the existence of "several cases in which a court

6

sustained a jury's verdict where the jury found for the plaintiff and awarded zero damages. . . where the facts of the case are such that no damages were in fact shown." *Lester*, 475 F.2d at 986.

The second case relied on by the plaintiff is a D.C. Court of Appeals case, *Worjloh v. Stephens*, 835 A.2d 1093 (D.C. 2003). In that case, pursuant to a special verdict form that posed various questions to the jury, "the jury made an express finding that appellant sustained personal injuries in the automobile accident as a direct and proximate result of appellee's negligence . . . [and] appellant's medical bills were admitted into evidence without objection." *Id.* at 1094-96. The court held that, in those circumstances, "some recovery for those expenses, and the related inconvenience, was dictated by the jury's own conclusion as to causation." *Id.* at 1096 (internal quotation omitted). In the instant case, by contrast, the jury did not make any express conclusions as to causation at all, so the rationale behind the ruling in *Worjloh* – the inconsistency between the jury's conclusions about causation and damages – is not implicated here.

Indeed, unlike in *Worjloh*, the jury here was not presented with a verdict form that would have enabled them to make detailed findings about causation and damages. Instead, the parties submitted an agreed-upon verdict sheet containing a single question: "What, if any, damages do you award in favor of plaintiff Cora L. Wandel as the direct result of the auto accident of July 28, 2006?" Verdict Sheet. It is self-evident that this verdict sheet explicitly acknowledged the possibility that the plaintiff would not be awarded any damages. That the plaintiff co-authored and approved a verdict sheet that expressly contemplated an award of zero damages negates the force of her argument that an award of zero damages requires a new trial in this case.

7

Moreover, the plaintiff's own presentation of the case severely minimized the significance of any claim for medical expenses and, indeed, directed the jury's attention away from consideration of those expenses. The plaintiff's case-in-chief and closing argument focused almost exclusively on the plaintiff's claim for lost earnings capacity damages. The plaintiff introduced the medical bill exhibits, Exhibits 16-22, without any discussion at the end of her case. The following excerpt from the end of the plaintiff's case-in-chief illustrates this point:

> THE COURT: I just want to clarify something: Mr. Parsons, in front of the jury, are you going to move in Exhibits 16 through 22?
>
> MR. PARSONS: Yes, Your Honor.
>
> (Jury in at 2:53 p.m.)
>
> THE COURT: Good afternoon, ladies and gentlemen. Mr. Parsons.
>
> MR. PARSONS: Your Honor, at this time, the Plaintiff moves into evidence Exhibits 16, 17, 18, 19, 20, 21, and 22.
>
> THE COURT: Any objection?
>
> MR. GHIARDI: No objection at this time.
>
> THE COURT: Their admission is granted. They will be admitted into evidence.
>
> (Plaintiff's Exhibits 16 through 22 admitted in evidence)
>
> MR. PARSONS: Your Honor, the Plaintiff rests.

Tr., June 16, at *156.

The plaintiff did not explain these exhibits or their relevance to the jury and did not put on evidence to establish that the expenses reflected in these bills were reasonable or appropriate.

For example, plaintiff's counsel did not ask the plaintiff about the medical bills during her testimony on direct examination, nor did he call any of the plaintiff's treating physicians from the time of the collision to discuss medical expenses. To the contrary, one of the plaintiff's treating physicians testified for the defense about his diagnosis of Parkinson's disease. Tr., June 16, at *157.

In closing argument, the plaintiff's counsel further minimized the relevance and significance of any direct medical expenses, and focused the jury on the claim for lost earnings capacity, for which the plaintiff sought damages ranging from several hundred thousand to over a million dollars. The plaintiff's counsel illustrated this claim for damages by using a large, demonstrative chart that he had filled out during the testimony of the plaintiff's economic expert witness. *See* Tr., June 17, at *36; Tr., June 16, at *133-*136. This chart made no reference to medical expenses. *See id.* Following an explanation of the plaintiff's claim for damages by reference to this chart, in plaintiff's counsel's sole reference to medical expenses during closing argument, he explained: "[W]e have also offered into evidence the medical bills [but] you can't do surgery to correct the sort of impairment that she has, they total only about $20,000. They are a small part of what this case is about. It's the loss of a career that we're talking about here." Tr., June 17, at *38.

Given the short shrift the plaintiff gave her own claim for medical expenses in the prosecution of her case, the jury's apparent decision that the plaintiff failed to meet her burden of proof in establishing the reasonableness of such expenses was not clearly arbitrary or irrational based on the evidence presented at trial. Accordingly, the Court does not find that a "seriously erroneous" result occurred that will result in a "clear miscarriage of justice" absent a new trial in this case. *See In re Lorazepam*, 467 F. Supp. 2d at 87.

9

### B. The Court responded to the jury's note with a proper instruction that the plaintiff requested.

The plaintiff's next argument for a new trial is that a jury note sent to the Court in the course of deliberations indicates that the jury was "focused upon an improper element in its deliberations." Pl.'s Mem. at 9. At 1:55 P.M. on June 17, 2011, during deliberations, the jury sent the Court a note that asked "Has the plaintiff already been awarded or paid any money from the defendants or their insurance?" In response, the Court gave the jury the following additional instruction, at the plaintiff's request, and over the defendant's objection: "An injured person may usually recover in full from a wrongdoer regardless of anything he or she may get from a collateral source unconnected with the wrongdoer. I also want to instruct you, as I did in my prior jury instructions, that you must decide this case based on the facts presented to you during the trial and that is the evidence on which you have to make your decision." Tr., June 17, Jury Note Proceedings. This instruction represented a proper explanation of the law in response to the jury's question, and the plaintiff does not contend otherwise. Thus, to the extent the question in the jury's note did reflect any consideration of an improper factor, the Court's subsequent instruction corrected the jury and eliminated any improper focus from their deliberations.

### C. There is no evidence of clerical error in providing exhibits to the jury that would necessitate a new trial.

Finally, the plaintiff raises one additional argument for a new trial in her reply brief in further support of her motion for a new trial. The plaintiff contends – and the defendant agrees – that certain exhibits reflecting the plaintiff's medical bills were not included in the package of evidentiary exhibits submitted to the jury. The plaintiff contends the exclusion of these exhibits from the jury's deliberations was a result of clerical error and provides grounds for a new trial.

The Court finds, however, that there is no indication of any error, clerical or otherwise. At the conclusion of trial, counsel provided their admitted exhibits to the courtroom deputy clerk for inclusion in the jury's deliberation materials. The courtroom deputy clerk then provided the bundles of each party's exhibits to the opposing counsel, to give each party an opportunity to review and approve the set of exhibits provided by opposing counsel. Upon obtaining the opposing counsel's consent, documented with a written signature on the exhibit summary list, the courtroom clerk then immediately provided the exhibit materials to the jury for deliberation. *See* ECF No. 38, Exhibit Lists (reflecting signature of counsel). Thus, to the extent that any exhibits were excluded from deliberation due to oversight, the oversight is attributable not to the courtroom deputy clerk, but rather to the counsel who compiled and provided the exhibits for the purpose of obtaining opposing counsel's consent before presentation to the jury. Moreover, the jury did not request to see the plaintiff's medical bill exhibits at any time during their deliberations, nor did plaintiff's counsel make any significant use of them at trial.

## IV. CONCLUSION

For the reasons explained above, the motion for a new trial is denied.

DATED: July 18, 2011

/s/ *Beryl A. Howell*
BERYL A. HOWELL
United States District Judge